**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 JUL 28 P 1:49

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

ROBERT S. CRAIG, et al.,　　　　　*

　　　　　　　　　　　　　　　　*

　　　Appellants,　　　　　　　　*　　Civil Appeal No.: GJH-15-2656

　　　　　　　　　　　　　　　　*

v.　　　　　　　　　　　　　　　*

MICHAEL P. CORBIN, et al.,　　　　*

　　　　　　　　　　　　　　　　*

　　　Appellees.　　　　　　　　　*

*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

### MEMORANDUM OPINION

Creditors Robert S. Craig and Barbara Craig (the "Craigs") and debtors Michael P. Corbin and Beth Anne Corbin (the "Corbins") have filed cross-appeals of the rulings of the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") entered on June 12, 2015 and August 27, 2015 in the matter of *Craig, et al. v. Corbin, et al.*, No. 13-00679 WIL. The Craigs argue that the Bankruptcy Court erred by: finding that there was no settlement agreement between the parties; not including post-judgment interest on the sanctions judgment as part of the Craigs' damages; and granting the Corbins' motion for reconsideration. The Corbins argue that the Bankruptcy Court erred by: determining that the debts owed to the Craigs are non-dischargeable; granting an award of damages to the Craigs for loss of use and/or rent; and granting an award of damages for unpaid property tax. For the reasons discussed below, this Court remands the issue of post-judgment interest to the Bankruptcy Court and affirms the rulings related to all other issues presented.

## I.    JURISDICTION

The Bankruptcy Court had subject matter jurisdiction over the complaints filed by

Appellants pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. According to 28 U.S.C. §

157(b)(2)(I), a proceeding to determine the dischargeability of debts is a core proceeding that

bankruptcy courts may hear and determine so long as such matters are referred to the bankruptcy

court by the district court. Pursuant to Local Rule 402, this Court referred such matters to the

bankruptcy judges of this District.

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of

bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges. 28 U.S.C.

§ 158(a)(1) (2012).

## II.    BACKGROUND

### A. State Court Proceedings

After four years of missed mortgage payments by the Corbins led to foreclosure on the

property located at 4540 Delauter Road, Frederick, Maryland 21702, the Craigs successfully bid

for the property at a foreclosure sale held on September 8, 2010. A. 76.[1] On November 3, 2010,

the Corbins, self-represented, filed a Request for Hearing of Exceptions to Foreclosure Sale,

which they amended with the assistance of counsel on December 1, 2010. A. 77. The filing

included allegations of unclean hands by the Craigs and that Mr. Craig had obtained confidential

documents belonging to the Corbins. A. 77. The Craigs intervened on December 7, 2010 and

deposed Mr. Corbin, who conceded that the allegedly confidential documents were publicly

available. A. 77.

---

[1] Unless stated otherwise, the facts are taken from the documents and the Bankruptcy Court's trial transcripts
provided by the Appellants in their Appendix (ECF No. 19-1–19-8). The citations are consistent with the pagination
printed on the Appendix.

On December 28, 2010, the Corbins, the Craigs, and their respective attorneys, Mr. Garza and Ms. Powell, met to put an "agreement on the record and to make sure that everybody understands the terms and that everybody is agreed to the terms of this settlement." A. 109. According to the Corbins, Mr. Garza did not outline the terms of the agreement prior to the meeting but merely advised that he had reached an agreement that they should agree to. A. 240.

During the meeting, Ms. Powell, who represented the Craigs, stated that the Corbins could remain on the property until May 12, 2011, but the offer was "contingent on the bank agreeing not to charge the Craigs interest on the loan for that additional four-month period."[2] A. 109–10. After the Corbins agreed to the settlement on the record, Ms. Powell asked Mr. Craig if he understood the terms of the agreement, which led to the following exchange:

> Mr. Craig: I do. We agree to them with the one qualification. My understanding was – oh, no. It is not a modification. It's just a clarification of what we discussed before. The monthly rent that we discussed was going to be accrued also retroactive, I thought, during that period that this forbearance is occurring. That if they don't move out in time, that also accrues.
>
> Mr. Garza: That's what she said.
>
> Mr. Craig: Well, no, the way she presented it was from the 12th on the rent would be accrued. What I'm clarifying is that the rent actually accrues from the sale date up to that date.
>
> Ms. Powell: Oh, I see what you are saying. Yes.
>
> Mr. Craig: And if, in fact, they move out, that doesn't come onto the table. If, in fact, they do, that gets accelerated.
>
> Mr. Garza: Let me be – the agreement is that the rent would accrue if they don't move out as of January 11th –
>
> Ms. Powell: Right.
>
> Mr. Garza: – and go forward.
>
> Mr. Craig: There you go. Thank you very much. That's a much more eloquent clarification.

---

[2] Mrs. Craig stated in her testimony that this condition was met. *See* A. 190.

A. 116–17. Mrs. Craig then agreed to the settlement without further qualification and the meeting was adjourned. A. 117.

Following this meeting, on January 7, 2011, the Corbins filed another set of exceptions without the assistance of counsel. A. 77. In a January 11, 2011 hearing before the Circuit Court for Frederick County, Maryland, Ms. Powell denied the existence of any settlement agreement citing a failure to meet the condition precedent of obtaining bank approval to waive interest. ECF No. 22 at 5 (citing A. A-5, 7:20–8:3). Additionally, Ms. Powell's January 19, 2011 letter to Mr. Garza stated the following:

> With respect to any purported settlement, as you know, the lender's consent was a necessary prerequisite to any agreement. Further, it was my client's intent that any waste by your client would also result in accrual of rent. In addition, when I received (not by service) the additional exceptions filed by your clients it was painfully clear that they had absolutely no intention of carrying out any agreement had one been reached. Accordingly, any settlement offer by my client is withdrawn. I am sorry that things have transpired this way but it was not of our doing.

Opp'n *ex rel.* Beth Anne Corbin, Michael P. Corbin, Ex. C, *Craig v. Corbin*, No. 13-00679

(Bankr. D. Md. Mar. 11, 2014).

A ruling granting final ratification of the foreclosure sale was entered in favor of the Craigs on February 23, 2011, and the Craigs attempted to close on the property on March 3, 2011. A. 78. However, the Corbins filed a Motion to Alter, Amend, or Revise Judgment that halted the closing. A. 78.

On May 26, 2011, the Circuit Court for Frederick County, Maryland granted a motion for sanctions against the Corbins, finding that the "Corbins have 'abused the legal procedure' and filed meritless exceptions for the improper purpose of delaying these proceedings.'" A. 81 (citation omitted). The July 20, 2011 Order awarded sanctions in the amount of $13,004.14, which included $11,806.50 for attorney's fees and $1,197.64 for disbursements. A. 83–84. The

4

Court of Special Appeals of Maryland dismissed the Corbins' appeal for lack of jurisdiction. A. 99A-4.

The Craigs filed a second motion for sanctions on December 18, 2012, this time against the Corbins and their attorney at the time, Mr. Solnik. A. 135. During the February 5, 2013 hearing in which sanctions were ultimately granted, A. 140, Mr. Solnik requested that the sanctions be awarded against him and not the Corbins, A. 477. Prior to the hearing scheduled to determine the amount of sanctions, the Craigs resolved their dispute with Mr. Solnik and withdrew their second motion for sanctions. ECF No. 19 at 10–11; A. 142.

## B. The Bankruptcy Court's Rulings

After the Corbins filed their bankruptcy case, the Craigs filed their Adversarial Claim and Request for Summary Judgment on November 8, 2013, asking that the debt owed to them by the Corbins be deemed non-dischargeable in bankruptcy. A. 14. The Corbins filed their response on January 2, 2014. A. 34–38. Both parties filed without the assistance of counsel. A. 32, 38. In addition to their response, the Corbins filed a Schedule of Exhibits, which included a "Letter of settlement between the Craigs and Mr. Solnik (the Corbins attorney)." A. 39.

1. The Bankruptcy Court's June 9, 2015 Ruling

On June 8, 2015, the Bankruptcy Court conducted a two-day bench trial, with both sides represented by counsel, ultimately concluding that the Corbins' debt owed to the Craigs was non-dischargeable. A. 184–306. The Bankruptcy Court determined that the Corbins "abused the legal procedure and filed meritless exceptions with [the] improper purpose of delaying the proceeding." A. 302 ("That is an act that they would know the consequences of, that the delay was going to cause cost expense and that the delay was intentional. I heard her testimony. She wanted to save her property."). The Bankruptcy Court also found that the Corbins made

allegations "in bad faith in an attempt to mislead the Court and delay the foreclosure proceedings as well as the Court's action in this matter." A. 302. As a result, "the Craigs, have incurred substantial attorney's fees, unfounded delays in taking possession of the property they purchased at foreclosure sale, and the Trustee has refused to complete the closing of the property until the present matter is resolved." A. 302.

The Bankruptcy Court also noted that the state court "made a determination that there was something sanctionable" and the fact that the Craigs chose to withdraw their motion for sanctions and "come into this court and prosecute it here doesn't mean that the Court didn't find that there was something sanctionable, they did." A. 304. In response to the Corbins pointing out that the docket does not indicate whether the sanctions were against the Corbins, their lawyer, or both, the Bankruptcy Court explained, "I understand. What I am saying is that whether it was against the attorney and I have no, I don't know who the attorney was at that point in time or anything. There is nothing in the record. . . . It doesn't matter. What I am saying is there was an award of sanctions because of the conduct." A. 304.

The Craigs also asked the Bankruptcy Court to find that the Corbins had breached a settlement agreement entered on December 28, 2010 and, as a result, owed additional damages to the Craigs. A. 288. When determining whether there was a settlement agreement, the Bankruptcy Court looked "at this after the fact to see whether or not the parties believed that there was an agreement," A. 303, and found that there was no agreement, A. 302. The Bankruptcy Court noted that there "were opportunities later to go before the Court and say we have an agreement, they've breached it, and therefore I want to enforce it," A. 302, but neither party did so or acted as if there was an agreement. The Corbins demonstrated that they did not believe there was an agreement by filing additional exceptions after the alleged contract was formed, and the Craigs

6

communicated they did not believe there was an agreement when their lawyer sent a letter to the

Corbins' lawyer and asserted that there was no agreement. A. 302.

In calculating damages, the Bankruptcy Court assessed the Craigs' loss of use/rent for the

property and the issue of unpaid taxes. Regarding the loss of use/rent, the Bankruptcy Court

noted that there was a court order that says that they are entitled to loss of use because of the

actions of the Debtors, and found "that the balance of the rent of $25,423.87 is appropriate

damages. That was part of the supersedeas bond." A. 303. However, the Bankruptcy Court

decided against granting damages for the inability to rent the house, noting that the testimony did

not indicate that the Craigs were going to rent the property and generate money, so the

Bankruptcy Court determined that the Craigs would be compensated for "the loss of the use of

the property and the fact that they had to pay rent of their own. And that has already been

granted. So I am not awarding the $72,493.15." A. 305. Regarding taxes, the Bankruptcy Court

stated that:

> The taxes pursuant to the bond order looked like what was left over in terms of
> my math – and I went through it a couple of times – was actually $1,374.02 . . . . I
> did the math based on what the supersedeas bond order was where the judge
> found that the taxes that they were entitled to for this period. And that I also find
> to be appropriate because these people own the property and would otherwise be
> required to pay taxes, but they didn't have the right to go into the property. And
> that is a consequence of the delay, the intentional delay. The desire of the Debtors
> to stay in the property as long as they could. Well they got to stay there, they have
> to pay the taxes during that period of time where they did in fact cause the delay
> and stayed in the property. So that is an additional, as I said, it looks like it is
> $1,374.02.

A. 303. After adding the balance for the taxes, loss of use/rent, and attorney's fees, the

Bankruptcy Court determined the total non-dischargeable claim was $82,038.63. A. 305.

2. The Bankruptcy Court's August 19, 2015 Ruling

The Corbins filed a Motion to Vacate Judgment and the Bankruptcy Court held a hearing

on the motion on August 19, 2015. A. 358. The hearing focused on whether the ruling regarding

damages for sanctions should be vacated in light of "new" evidence that the sanction was

resolved between the Craigs and the Corbins' former attorney, Mr. Solnik. Upon becoming

aware that the Craigs settled their sanctions claim with Mr. Solnik and agreed to "give up the

claim against the Debtors in this particular case and just look to Mr. [Solnik] for that remedy," A.

399–400, the Bankruptcy Court found that the part of the judgment addressing the same damages

should be vacated, because it was "no longer outstanding," and "should not be the basis of an

award in this case." A. 416–17. After hearing both parties, the Bankruptcy Court reasoned that

the parties were "surprised" that the Bankruptcy Court "went in a different tangent and therefore,

because of that, neither party was necessarily prepared to present to this Court evidence that was

relevant to my decision. Both sides had the information. Neither side presented it. It looks like it

was a surprise to both." A. 397. The Bankruptcy Court's ruling that "damages should be based

on prior rulings of the State Court, including the sanctions award by the State Court and not on

the Plaintiffs' request for damages under a contract that this Court determined not to exist,"

presented an unanticipated issue that both parties were unprepared for during trial. A. 415–16.

Explaining further, the Court noted:

> The Defendants could not have anticipated that this Court was going to award
> damages in the manner that it did, so they would not have known to obtain the
> evidence that the second sanctions motion had been resolved. Therefore, there
> was no failure to use due diligence because the issue was not raised as part of the
> trial. It was raised by this Court subsequent to the dischargeability ruling and as
> part of the damage analysis.

A. 416. In the alternative, the Bankruptcy Court reasoned that it "must act to prevent a manifest

injustice" because the "attorney's fees sought through the second sanctions motion has been paid

and satisfied." A. 416.

Additionally, the Craigs asked the Bankruptcy Court to amend the prior order to include post-judgment interest. The Bankruptcy Court briefly addressed the issue, noting that post-judgment interest is usually requested in the complaint. A. 400.

## III. DISCUSSION

### A. Standard of Review

Pursuant to Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") 8001 and 8013, district courts may affirm, modify, remand, or reverse a bankruptcy judge's order. *See* Fed. R. Bankr. P. 8001, 8013. Acting as an appellate court, district courts review bankruptcy court findings of fact for clear error and review conclusions of law de novo. *In re Deutchman*, 192 F.3d 457, 459 (4th Cir. 1999); *Rose v. Logan*, No. RDB-13-3592, 2014 U.S. Dist. LEXIS 38890, at *12 (D. Md. Mar. 25, 2014) (citing *In re Merry-Go-Round Enters., Inc.*, 400 F.3d 219, 224 (4th Cir. 2005)); *Rinn v. First Union Nat'l Bank*, 176 B.R. 401, 407 (Bankr. D. Md. 1995); *see also United States v. U.S. Gypsum Co.*, 333 U.S. 364, 394 (1948) ("[F]indings of fact in actions tried without a jury 'shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.'"). "A factual finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed.'" *Lakefront Inv'r LLC v. Clarkson*, 484 B.R. 72, 80 (D. Md. 2012) (quoting *U.S. Gypsum Co.*, 333 U.S. at 395). Conversely, de novo review requires the Court to consider "an issue as if it had not been decided previously." *Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 246 (4th Cir. 2009). A bankruptcy court's application of law to fact is reviewed for abuse of discretion, which exists where the bankruptcy court's decision rests upon a clearly erroneous

finding of fact, conclusion of law, or application of law to fact. *Rose v. Logan*, 2014 U.S. Dist.
LEXIS 38890, at *12–13.

### B. The Craigs' Appeal

#### 1. The Bankruptcy Court's finding that there was no settlement agreement

The Craigs assert that the Bankruptcy Court erred when it determined that the parties did
not enter into a settlement agreement that was breached by the Corbins. The Bankruptcy Court
based its determination that there was no agreement on the actions of the parties after the alleged
agreement, including a letter from the Craigs' attorney asserting there was no agreement, and the
failure to place the agreement on the record at future proceedings despite multiple opportunities
to do so. A. 303; 83:13–85:2.

In Maryland, a contract "is formed when an unrevoked offer made by one person is
accepted by another. An 'offer' is the 'manifestation of willingness to enter into a bargain, so
made as to justify another person in understanding that his assent to that bargain is invited and
will conclude it.'" *Prince George's Cty. v. Silverman*, 58 Md. App. 41, 57 (1984) (quoting 1
Restatement Contracts (2d) § 24 (1979)). An acceptance "can be accomplished by acts as well as
words; no formal acceptance is required." *Id.* at 57. "The validity of contracts which require
performance by one party to the satisfaction of the other is well established because there is
always the implied obligation upon the party to be satisfied that the privilege be exercised in
fairness and good faith." *United Wholesalers, Inc. v. A. J. Armstrong Co.*, 251 F.2d 860, 862 (4th
Cir. 1958).

The Craigs claim that a settlement was reached before and during the December 28, 2010
meeting. Although the purported agreement was transcribed by a court-reporter at the meeting,
the agreement was never placed on the record in a court proceeding. The Craigs argue that this is

not fatal to their claim because while "Bankruptcy Rule 9019 requires court approval of certain compromises in disputes pending before the Bankruptcy Court[, t]he Maryland Rules have no similar requirement for disputes that are pending in state court." ECF No. 19 at 25. Thus, if "the parties had written down the terms on a piece of paper and signed the paper, there would be no doubt that an agreement was reached notwithstanding that the Agreement was not placed on the record before a Judge." ECF No. 19 at 30.

Conversely, the Corbins contend that there was no agreement because they "did not know what terms had been discussed prior to the parties going on the record." ECF 30 at 6. But even if true, this does not negate the existence of an agreement between the parties because an agreement can be accepted by counsel on behalf of its client. *See, e.g.*, *White Flint Realty Grp. Ltd. P'ship, LLLP v. Bainbridge St. Elmo Bethesda Apts., LLC*, No. 362334-V, 2014 Md. Cir. Ct. LEXIS 3, at *4 (Cir. Ct. Md. Apr. 3, 2014) (describing the court's acceptance of a settlement agreed upon by counsel for each of their client's behalf); *see also Bissada v. Ark. Children's Hosp.*, 639 F.3d 825, 831 (8th Cir. 2011) (finding that the plaintiff agreed to the language that his lawyer communicated and the other party's lawyer accepted, forming a contract); *Elustra v. Mineo*, 595 F.3d 699, 709 (7th Cir. 2010) ("Given the record we have before us, the district court had no choice but to confirm the magistrate judge's finding that the Elustras –directly or through their lawyer—accepted the agreement.").

Nonetheless, the transcribed dialogue between the parties during the *attempt* to reach an agreement, coupled with the parties behavior after the attempted agreement demonstrate that the Bankruptcy Court was correct in finding that there was no meeting of the minds and thus no agreement. As indicated at the opening of the December 28, 2010 meeting, the purpose of the meeting was to put their "agreement on the record and to make sure that everybody understands

11

the terms and that everybody is agreed to the terms of this settlement." A. 109. However, rather than making an unqualified acceptance of an offer, Mr. Craig made a "clarification," which constituted a counter-offer. In Maryland, "[q]ualified or conditional acceptance are counter offers and reject the original offer. A conditional acceptance is in effect a statement that the offeree is willing to enter into a bargain differing in some respect from that proposed in the original offer." *Ebline v. Campbell*, 209 Md. 584, 590 (1956) (citation omitted). While the Craigs deny that Mr. Craig presented the counter-offer, A. 209, Mr. Craig's qualification potentially added a significant amount of debt to that which was owed to the Craigs and thus reflects a material change to the terms of the agreement. Critically, the record reflects no mutual assent to the terms of the alleged contract after Mr. Craig proposed the counter offer. *See* A. 116–17; ECF No. 22 at 21.

To the extent there is ambiguity as to whether or not an agreement existed, the acts and statements made after the December 28, 2010 meeting indicate that the parties did not have an agreement. When determining whether there was an agreement, the Bankruptcy Court looked "at this after the fact to see whether or not the parties believed that there was an agreement and it just doesn't look like they acted that way." A. 303. The Bankruptcy Court noted that there was a sanctions order that was "entered on July 25, 2011 in the amount of $13,414 for attorney's fees and costs" that did not include any mention of a prior agreement. A. 303. The Corbins demonstrated that they did not believe there was an agreement by filing additional exceptions after the alleged contract was formed. *See* A. 302. The Craigs communicated they did not believe there was an agreement when their lawyer sent a letter to the Corbins' lawyer and asserted that there was no agreement. A. 302; Opp'n *ex rel.* Beth Anne Corbin, Michael P. Corbin, Ex. C, *Craig v. Corbin*, No. 13-00679 (Bankr. D. Md. Mar. 11, 2014). As the Fourth Circuit has

explained, "sometimes even circumstances of a negative character such as the failure of both parties to take any steps looking toward performance may amount to a manifestation of mutual assent to rescind." *United Wholesalers, Inc.*, 251 F.2d at 862. If there was an agreement, the Craigs' attorney's denial of its existence and the failure of both parties to take any steps toward performance would be enough to establish that the parties mutually opted not to honor the agreement. Ms. Powell representations at the January 11, 2011 hearing and her Jan. 19, 2011 letter to Mr. Garza support the notion that there was no contract. Accordingly, the Bankruptcy Court's finding that there was no settlement agreement is affirmed.

### 2. Post-judgment Interest on the Craigs' Sanction Award

The Craigs request that this Court find that the Bankruptcy Court erred in not including post-judgment interest in its award for sanctions, arguing that "as a matter of law, the Craigs were entitled to receive post-Judgment interest at the rate of ten percent (10%) per annum from July 25, 2011, until the Judgment was paid in full." ECF No. 19 at 32. For post-judgment interest, Maryland Rule 2-604(b) states, a "money judgment shall bear interest at the rate prescribed by law from the date of entry." *Med. Mut. Liab. Ins. Soc'y v. Davis*, 389 Md. 95, 99 n.2 (2005). Except as provided by Md. Code § 11-106, the legal rate of interest on a judgment is ten percent per annum on the amount of judgment. *Id.* at 106 n.6.

The Craigs raised this issue for the first time at the hearing on the Motion to Alter,[3] but under 28 U.S.C. § 1961, "every money judgment bears interest from the date of its entry, so there is never any need to demand post-judgment interest as relief." *Great Point Intermodal, LLC v. Norfolk S. Corp. (In re Great Point Intermodal, LLC)*, 334 B.R. 359, 362 (B.R. E.D. Pa. 2005)

---

[3] The Bankruptcy Court appears to have rejected the request by noting that a request for interest is usually included in the Complaint, A. 400, and not including the interest in the final award.

(quoting 10 Moore's Federal Practice, § 54.72[1][a] (Matthew Bender 3d ed.)). As noted by the

Bankruptcy Court in the Eastern District of Pennsylvania:

> With the exception of default judgments, Rule 54(c) provides that every final
> judgment should grant to the prevailing party all the relief to which the party is
> entitled, irrespective of whether the pleadings demanded that relief. Rule 54(c)
> ensures that the demand for judgment will not be read to rigidly control the relief
> that is ultimately awarded in the action. Essentially, Rule 54(c) ensures that the
> substance will prevail over form. If the course of the action as litigated by the
> parties shows that relief of a particular kind or scope is warranted, that relief
> should be awarded, regardless of the state of the pleadings. The available relief is
> determined by the proof, not by the pleadings, and it is the duty of the court to
> grant all relief to which a party is entitled on that proof.

*Id.* Finding that post-judgment interest is warranted, this Court remands to the Bankruptcy Court

the determination of the appropriate post-judgment interest.

### 3. The Bankruptcy Judge Granting the Corbin's Motion for Reconsideration

The Craigs appeal the Bankruptcy Court's decision to reconsider and ultimately vacate

part of its earlier decision. This Court reviews the Bankruptcy Court's ruling on a motion to

reconsider for abuse of discretion. *Rose*, 2014 U.S. Dist. LEXIS 38890, at *13. Courts are given

"considerable discretion in deciding whether to modify or amend a judgment." *Gagliano v.

Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008); *Jacobs v. Elec. Data Sys.

Corp.*, 240 F.R.D. 595, 599 (M.D. Ala. 2007) (quoting *Am. Home Assur. Co. v. Glenn Estess &

Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985)) ("Rule 59(e) provides no specific

grounds for relief, and 'the decision to alter or amend judgment is committed to the sound

discretion of the [trial] judge.'").

Under Federal Rule of Civil Procedure 59(e), a judgment may be amended to

accommodate an intervening change in law, account for new evidence, or correct a clear error of

law or prevent manifest injustice. *Rose*, 2014 U.S. Dist. LEXIS 38890, at *28–29. "A party may

move to alter or amend a final judgment under Rule 59 within twenty-eight days of the

judgment's issuance . . . ." *Due Forni LLC v. Euro Rest. Sols., Inc.*, No. PWG-13-3861, 2014

U.S. Dist. LEXIS 157870, at *2 (D. Md. Nov. 6, 2014) (citing *MLC Auto., LLC v. Town of So.*

*Pines*, 532 F.3d 269, 277–80 (4th Cir. 2008)). "In general, reconsideration of a judgment after its

entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l*

*Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). However, Rule 59(e) enables courts to "correct

its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate

proceedings.'" *Id.* at 403 (citation omitted).

Manifest injustice may be found "where a court 'has patently misunderstood a party, or

has made a decision outside the adversarial issues presented to the Court by the parties, or has

made an error not of reasoning but of apprehension.'" *Wagner v. Warden*, No. ELH-14-791,

2016 U.S. Dist. LEXIS 39160, at *7 (D. Md. Mar. 24, 2016) (citation omitted). Manifest

injustice is an error by the court that is direct, obvious, and observable. *Id.* at *7–8 (citation

omitted); *Von Kahle v. Roemmele (In re Roemmele)*, 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012).

When a party seeks reconsideration on the basis of manifest injustice, the prior decision must be

"dead wrong." *See TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009); *In re Roemmele*,

466 B.R. at 712 ("In order for a court to reconsider a decision due to 'manifest injustice,' the

record presented must be 'so patently unfair and tainted that the error is manifestly clear to all

who view it.'").

Upon becoming aware that the Craigs settled their sanctions claim with Mr. Solnik and

agreed to "give up the claim against the Debtors in this particular case and just look to Mr.

[Solnik] for that remedy," A. 399–400, the Bankruptcy Court found that the part of the judgment

addressing the same damages, the $42,000, should be vacated, because it was "no longer

outstanding," and "should not be the basis of an award in this case." A. 416–17. The Bankruptcy

15

Court did not abuse its discretion by finding that this was a manifest injustice requiring a correction in the judgment. Finding no abuse of discretion, the Bankruptcy Court's decision to vacate part of its ruling is affirmed.

### C. The Corbins' Appeal

#### 1. Dischargeability of Debts Under 11 U.S.C. § 523(a)(6)

The Bankruptcy Court ruled that the obligation due to the Craigs from the Corbins was non-dischargeable under 11 U.S.C. § 523(a)(6). Section 523(a)(6) of the Bankruptcy Code provides that a general discharge of debt in bankruptcy does not discharge a debtor from any debt arising from a "willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6) (2012). "The discharge exceptions are to be narrowly construed in favor of the debtor since the aim of the Bankruptcy Code is to give the debtor a fresh start." *Miller v. J.D. Abrams*, 156 F.3d 598, 602 (5th Cir. 1998). In order to establish that a debt is nondischargeable under 11 U.S.C. § 523(a)(6), a creditor must prove by a preponderance of the evidence that the act that gave rise to the debt was both willful and malicious. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 669 (Bankr. E.D. Va. 2001); *In re Higginotham*, 117 B.R. 211, 214 (Bankr. E.D. Va. 1990). Review of a bankruptcy court's order "regarding nondischargeability is a mixed question of law and fact." *Van Aken v. Van Aken (In re Van Aken)*, 320 B.R. 620, 622 (B.A.P. 6th Cir. 2005). Typically, decisions involving mixed questions of law and fact are reviewed de novo. *Rinn*, 176 B.R. at 407.

##### a. Willfulness

"An injury is willful when a court can determine 'that a debtor intended the act and by his or her conduct intended to cause injury.'" *Desert Palace, Inc. v. Rich*, No. GJH-15-0091, 2015

16

U.S. Dist. LEXIS 132580, at *10 (D. Md. Sept. 30, 2015) (citation omitted). To determine

whether a debtor intended to injure a creditor, courts may use the "objectively substantial

certainty test" or the "subjective motive" test. *Parsons v. Parks (In re Parks)*, 91 F. App'x 817,

819 (4th Cir. 2003). Whether the debtor intended to injure the creditor can be established by

demonstrating that the debtor took action that caused, or was substantially certain to cause, the

injury. *Desert Palace, Inc.*, 2015 U.S. Dist. LEXIS 132580, at *10. The Court considers the

debtor's "subjective state of mind" and not whether a "reasonable debtor" should have known

that his act would adversely affect another's rights. *Id.* at *11 *(quoting In re Stanley*, 66 F.3d at

668). Debts arising from recklessly or negligently inflicted injuries do not fall within § 523(a)(6).

*Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998).

    After a two-day bench trial, the Bankruptcy Court determined that the Corbins "abused

the legal procedure and filed meritless exceptions with [the] improper purpose of delaying the

proceeding. That is an act that they would know the consequences of, that the delay was going to

cause cost expense and that the delay was intentional. I heard her testimony. She wanted to save

her property." A. 302. The Corbins note that Ms. Corbin "testified that she provided information

to her attorney and that her attorney raised the unclean hands defense" without being instructed

to do so. ECF No. 22 at 42. The Corbins also highlight that the Circuit Court granted the

sanctions against Mr. Solnik and not the Corbins. ECF No. 22 at 43. In response, the Bankruptcy

Court explained, "I understand. What I am saying is that whether it was against the attorney and

I have no, I don't know who the attorney was at that point in time or anything. There is nothing

in the record. . . . It doesn't matter. What I am saying is there was an award of sanctions because

of the conduct." A. 304. This Court agrees. The record shows that the Corbins filed multiple

motions, including motions on their own behalf, *see, e.g.*, A. 77, and the Circuit Court originally

indicated that sanctions would be granted against the Corbins before accepting Mr. Solnik's request that sanctions be exclusively against him, A. 477.

The evidence demonstrates that the Corbins willfully delayed the case as long as possible in order to stay in the property and prevent the Craigs from taking possession. Thus, it is clear that the Corbins intended both the act and to cause the injury and that their action was therefore willful.

### b. Malice

Likewise, the Bankruptcy Court was correct in its finding of malice. When evaluating the dischargeability of debt under 11 U.S.C. § 523(a)(6), malice is defined as "causing injury without just cause or excuse." *Desert Palace, Inc.*, 2015 U.S. Dist. LEXIS 132580, at *16 (quoting *In re Davis*, 262 B.R. at 670). A debtor may act with malice "without bearing any subjective ill will toward plaintiff creditor and without having any specific intent to injure the creditor." *Id.* Specific malice is not required on the part of the debtor. *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1008 (4th Cir. 1985). If malice is not express, implied malice "may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances" to establish malice under § 523(a)(6). *Id.* at 1010. The creditor can establish malice on an implied basis, through facts evidencing the debtor's behavior and surrounding circumstances. *In re Davis*, 262 B.R. at 671.

Here, based on the evidence before it, the Bankruptcy Court correctly found that the Corbins made allegations "in bad faith in an attempt to mislead the Court and delay the foreclosure proceedings as well as the Court's action in this matter." A. 302. The Corbins tactic of filing multiple motions to delay the Craigs from taking possession of the property is certainly

enough to find implied malice, if not express. The Bankruptcy Court's ruling that the Corbins'
debt owed to the Craigs is nondischargeable is affirmed.

### 2. The Craigs' award for loss of use/rent

For the first time, the Corbins argue that the award given by the Bankruptcy Court for the
loss of use/rent was improper because they were special damages not pled in the Amended
Complaint. "'[Q]uestions not raised and properly preserved in the trial forum will not be noticed
on appeal in the absence of exceptional circumstances.'" *Long Term Care Partners, LLC v.
United States*, 516 F.3d 225, 237 (4th Cir. 2008) (citation omitted). Because the argument that
this award constituted special damages was not raised before the Bankruptcy Court, it is not
properly before this Court. Even if the issue was properly raised and preserved, it would fail.

The Corbins assert that the Bankruptcy Court erred in awarding damages for loss of
use/rent because loss of use/rent constitutes special damages but was not requested in the
Amended Complaint. ECF No. 22 at 27. The only mention of rent in the Amended Complaint is
in the facts section, which states that the Craigs agreed to pay them pursuant to the alleged
settlement agreement. ECF No. 22 at 27–28. The Corbins assert that this "omission greatly
prejudiced the Corbins because without adequate notice that loss of use would be an element of
damages sought at trial, the Corbins were robbed of their opportunity to investigate and defend a
claim for loss of use and/or rent before, during, and after trial." ECF No. 22 at 27. Additionally,
according to the Corbins, the Craigs never pleaded that "the basis of their claim for relief was
based on the decision of the State Court and therefore the relief granted was outside the scope of
the Complaint." ECF No. 22 at 38.

To support the proposition that loss of use/rent is a special damage, the Corbins point to
*Chesapeake & O. R. Co. v. Elk Refining Co.*, which held that "rental reasonably and necessarily

paid for the *use of other property* to take the place of that which has been damaged, until it can be repaired or replaced, is a fair measure of such special damage." *Chesapeake & O. R. Co. v. Elk Refining Co.*, 186 F.2d 30, 32–33 (4th Cir. 1950) (emphasis added). The Corbins also cite a Maryland case that "asserted damages stemming from the contamination of their water supply, other consequential effects, and alleged misrepresentations by Exxon." *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 317 (Md. App. 2012). Neither case is instructive. "By contract, consequential damages 'arise from the intervention of "special circumstances" not ordinarily predictable and are compensable only if it is determined that the special circumstances were within the contemplation of the parties to the contract.'" *Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 725 (4th Cir. 2014) (citation omitted). The "ordinarily predictable" consequence of the Corbins improperly delaying the Craigs from taking possession of the property was to deny them the use of the property, precisely the damages awarded by the State court in the Supersedeas Order. Thus, they are not special damages. While there will be circumstances in which loss of use/rent would be special damages—and *Chesapeake* and *Exxon* are two examples—loss of use/rent was a predictable byproduct of the Corbins' acts, making Rule 9(g) inapplicable.

The Corbins also argue that the Bankruptcy Court's ruling was erroneous because the loss of use/rent award was based on the sanctions assessed against the Corbins' counsel and not the Corbins. ECF No. 22 at 34 ("However, sanctions were not awarded against the Corbins. Instead the sanctions were awarded against their prior counsel."). As indicated earlier, the Bankruptcy Court found bad faith in the efforts of the *Corbins* to delay the foreclosure proceedings. Thus, the Bankruptcy Court did not abuse its discretion in awarding damages for the loss of use/rent.

3. The Craigs' award for unpaid taxes

The Corbins also challenge the award for unpaid taxes because "the Craigs took possession of the property on February 5, 2013, which is the same date as the hearing on the Craigs' Motion to Release Supersedeas Bond in the Circuit Court." ECF No. 22 at 38–39. The Bankruptcy Court awarded damages for unpaid taxes because "the funds from the bond were not sufficient to cover all of the expenses that were awarded by the Circuit Court in the Order." ECF No. 26 at 46. Based on its review of the facts presented at trial and to the Circuit Court, the Bankruptcy Court calculated the taxes that remained outstanding as of the trial of the adversary proceeding. This Court finds no error in the Bankruptcy Court's determination.

Furthermore, as with the issue of loss of use/rent, if an award for taxes was improper, the issue cannot be considered as part of this appeal because the Corbins did not raise the issue at the trial level, as an initial matter, or as a Motion for Reconsideration, and "'questions not raised and properly preserved in the trial forum will not be noticed on appeal in the absence of exceptional circumstances.'" *Long Term Care Partners, LLC*, 516 F.3d at 237 (citation omitted); *see also Wilson v. Dryvit Sys.*, 71 F. App'x 960, 962 (4th Cir. 2003) (quoting *Holland v. Big River Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("'Generally, issues that were not raised in the district court will not be addressed on appeal.'"). The Bankruptcy Court's decision to award taxes is affirmed.

## IV.    Conclusion

Based on the foregoing, this Court remands the issue of post-judgment interest to the Bankruptcy Court and affirms the rulings related to all other issues presented. A separate Order follows.

Dated: July 28, 2016

GEORGE J. HAZEL
United States District Judge